## STATE v. SAMUEL LENARD PARKER AND ANOTHER.

166 N. W. (2d) 347.

March 21, 1969—No. 41538.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *William B. Randall,* County Attorney, and *Warren E. Peterson,* Assistant County Attorney, for appellant.

*Robins & Meshbesher, Ronald I. Meshbesher,* and *Morley M. Friedman,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

This is a prosecution on an indictment charging defendants with possession of narcotics. The State of Minnesota appeals from an order of the district court suppressing evidence obtained through a search warrant executed by police officers who failed to announce their authority and purpose before gaining entry.

On March 26, 1968, Robert P. Kunz, a police officer for the city of St. Paul, petitioned for and obtained from the municipal court a warrant to search the premises at 649 Selby Avenue for narcotics, dangerous drugs, and drug-dispensing equipment.[1] The following day at about 7:15 a. m., the police converged on the premises. Two officers were in uniform, two in plainclothes, and Sergeant Kunz and one other officer were dressed as workmen. What transpired thereafter is set forth in the trial court's findings as follows:

"* * * Sgt. Kunz pounded on the front door, at intervals, for approximately one minute. There was no response to the pounding nor did Sgt. Kunz see any movement within the premises. Sgt. Kunz then broke the glass in the front door with a sledge hammer, all officers entered and ran into the back room where they found Samuel Lenard Parker and Geraldine Waunita Thibodeaux. As Sgt. Kunz came through the door, Miss Thibodeaux, with one hand appearing clenched, dashed into the toilet room shutting the door behind her. Sgt. Kunz pursued and ordered her out of the toilet room, and, upon her exit, he noticed a small rubber sack along side the toilet.

\* \* \* \* \*

"The capsules found in the bag in the toilet room were placed on a counter. The defendant, Parker, having been advised of his rights, came

---

[1] Because we are of the opinion that the affidavit in support of the petition is of critical importance, it is set out in full as an appendix.

to the counter and identified the tan ones as being heroin and the white ones as being cocaine and said 'I might as well tell you because when you get them to headquarters you will find out what they are anyway'. Shortly after defendant was taken to the St. Paul Public Safety Building, Sgt. Kunz noticed that he was breaking out in a sweat and his eyes were dilating and that he continually wiped his forehead. Sgt. Kunz asked him if he was going into withdrawal symptoms and defendant responded 'I am kind of sick, I had a shot last night around 11:00 o'clock and I was just getting ready to take another one before you broke in'. Defendant Parker also admitted to being a user of narcotics and Sgt. Kunz testified that Parker's arms were heavily scarred."

The narcotics thus seized are the subject of these proceedings.

The narrow issue is whether the failure of the police officers to announce their authority and purpose in gaining entrance to defendants' premises rendered the search unlawful and the evidence obtained inadmissible. No statute in Minnesota governs the question, and we are aware of no mandate of the United States Supreme Court which interprets the Fourth Amendment to exclude the evidence on constitutional grounds. [2] We have concluded that the officers were justified in executing the search warrant without announcing their authority and purpose and that the evidence seized was therefore not inadmissible on that ground.

It is significant that the Minnesota statutes specify the manner in

---

[2] The provisions of the State and Federal Constitutions which are applicable are as follows: U. S. Const. Amend. IV provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

Minn. Const. art. 1, § 10, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized."

which an *arrest* warrant must be executed but are silent with respect to *search* warrants. Minn. St. 629.33 provides:

"If, after notice of intention to arrest defendant, he shall flee or forcibly resist, the officer may use all necessary means to effect his arrest. He may break open an inner or outer door or window of a dwelling house to execute the warrant if, after notice of his authority and purpose, he shall be refused admittance, or when necessary for his own liberation, or for the purpose of liberating another person who, having entered to make an arrest, shall be detained therein."

The Federal statute, on the other hand, in similar language directs the manner in which *search* warrants shall be executed. 18 USCA, § 3109, provides:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

The state argues persuasively that the legislature's failure to deal with search warrants is a tacit recognition of a policy consideraton which distinguishes arrests from searches. As the state points out, the opportunity for concealing a person sought under an arrest warrant is much slighter than the opportunity for concealing or destroying evidence sought under a search warrant. Hence, the warning communicated by an announcement of authority and purpose does not have the tendency to thwart the function of an arrest warrant as it does a search warrant.

Apart from statute, the earliest common-law decision enunciating the rule seems to be Semayne's Case, 5 Coke Rep. 91a, 91b, 11 Eng. Rul. Cas. 629, 631, 77 Eng. Rep. 194, 195, decided in the year 1603, where the court said:

"In all cases when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But be-

fore he breaks it, he ought to signify the cause of his coming, and to make request to open doors * * *."

In 1763, the principle that a man's house is his castle was eloquently articulated by William Pitt during a debate in Parliament, as follows (The Oxford Dictionary of Quotations [2 ed.] p. 379):

"The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!" [3]

We do not attempt an exhaustive analysis of the state and Federal cases which have dealt with the problem; it is enough to refer to those decisions which, if they do not govern our disposition, are persuasive precedent. They have in common the admissibility of evidence seized in gambling or narcotics cases where the evidence was susceptible of easy concealment or destruction and where the entry by police was unannounced.

Accarino v. United States, 85 App. D. C. 394, 179 F. (2d) 456, held that numbers slips used in gambling should have been suppressed because they were seized incident to an arrest rendered unlawful by the entry of police into defendant's apartment without a warrant and without announcing their authority and purpose. The court was dealing with a Federal crime and based its decision on common-law principles, noting that even with a warrant the failure to announce would render the arrest unlawful. In 1956, the Supreme Court of California decided in People v. Maddox, 46 Cal. (2d) 301, 294 P. (2d) 6, that failure to comply with a statute requiring the police to announce their authority and purpose did

---

[3] A scholarly presentation of the history of the rule may be found in Accarino v. United States, 85 App. D. C. 394, 179 F. (2d) 456, and in Miller v. United States, 357 U. S. 301, 78 S. Ct. 1190, 2 L. ed. (2d) 1332. See, also, Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California*, 112 U. of Pa. L. Rev. 499; Kaplan, *Search and Seizure: A No-Man's Land in the Criminal Law*, 49 Calif. L. Rev. 474, 500.

not render inadmissible narcotic equipment seized as an incident to the arrest. [4] Judge Traynor in that opinion stated (46 Cal. [2d] 306, 294 P. [2d] 9):

"* * * Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose."

There followed a series of similar decisions by the United States Supreme Court. Significantly, however, all but one of the cases dealt with Federal prosecutions. The court did not find it necessary to base its decisions on the application of the Fourth Amendment to state court procedures.

A landmark case was Miller v. United States, 357 U. S. 301, 78 S. Ct. 1190, 2 L. ed. (2d) 1332. That decision dealt with a violation of Federal narcotics laws in the District of Columbia where police had broken into defendant's house without a warrant. The court expressly adopted the common-law rule set forth in Semayne's Case, *supra*, codified in 18 USCA, § 3109, holding that because the officers did not give notice before breaking the door to enter defendant's home the arrest was unlawful and the evidence seized should have been suppressed. In reaching this conclusion it recognized decisions which excused compliance because of "exigent circumstances," such as the officer's good-faith belief that someone within was in peril or that the person to be arrested was fleeing

---

[4] The applicable California statute, Penal Code, § 844, provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

or attempting to destroy evidence. The court concluded by saying (357 U. S. 313, 78 S. Ct. 1198, 2 L. ed. [2d] 1340):

"* * * The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application."

The case of Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. ed. (2d) 726, which followed in 1963, was a review of a state conviction for possession of narcotics. The United States Supreme Court approved an arrest because of "exigent circumstances" which the California court had held excused compliance with California Penal Code, §844, requiring the announcement of authority and purpose. In so doing, the court said (374 U. S. 40, 83 S. Ct. 1633, 10 L. ed. [2d] 742):

"* * * In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police."

In the same year, the court held illegal an arrest without a warrant in a prosecution under the Federal narcotics law in Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. ed. (2d) 441. It noted that the government claimed no extraordinary circumstances such as the imminent destruction of vital evidence to excuse the arresting officer's failure truthfully to state his mission before he broke in. For that reason, the evidence seized was suppressed.

The most recent pronouncement on this subject is Sabbath v. United States, 391 U. S. 585, 88 S. Ct. 1755, 20 L. ed. (2d) 828, decided in 1968.[5] This case involved a Federal prosecution for illegally importing narcotics. There the officers knocked, waited a few seconds, and upon

---

[5] The decision of the United States Supreme Court rendered in Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. ed. (2d) 637, holds only that the affidavit in support of a search warrant was inadequate. This issue was not raised in the case at hand. Here the informant personally observed the illegal activities of defendant and his reliability was supported by a statement that information previously given by him had proved true and accurate.

receiving no response opened an unlocked door and entered the apartment with drawn guns. The Supreme Court held that under 18 USCA, § 3109, narcotics seized were not admissible because of the failure of the officers to announce their authority and purpose. Apparently the entry was made without a warrant. The court rejected the claim of the government that the fact that an announcement might have endangered an informant or the officers themselves was an "exigent circumstance," saying that nothing in the record supported that claim. In a footnote the court recognized the exceptions to the "announcement and entry rule" set forth in the separate opinion of Mr. Justice Brennan (with whom the Chief Justice and Justices Douglas and Goldberg concurred) in Ker v. California, *supra*. Those exceptions were stated as follows (374 U. S. 47, 83 S. Ct. 1636, 10 L. ed. [2d] 746):

"* * * (1) [W]here the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted."

The rationale for the rule requiring officers to announce their authority and purpose before entering a home, with or without a warrant, has not been clearly articulated. Basically, of course, its purpose is to avoid the needless destruction of property where the owner or occupant is willing to admit the police voluntarily. In Sabbath, the court advanced as a reason the safeguarding of officers who might otherwise be mistaken for intruders.

The difficulty confronting courts in fashioning a rule which protects the rights of individuals and at the same time recognizes the realities of law enforcement was suggested by Mr. Justice Frankfurter in his dissenting opinion in United States v. Rabinowitz, 339 U. S. 56, 69, 70 S. Ct. 430, 436, 94 L. ed. 653, 662:

"It is a fair summary of history to say that the safeguards of liberty

have frequently been forged in controversies involving not very nice people."

Unfortunately, those who are most likely to be the victims of unauthorized intrusion by the authorities, or entries made under a mistake of fact, represent a segment of society least likely to have a meaningful redress. Although many are, indeed, "not very nice people," they, too, are entitled to privacy and freedom from intrusion except where probable cause is manifest.

A number of courts have addressed themselves to the practical problems of preserving evidence in gambling and narcotics cases where the property sought is readily concealed. The problem is well stated in Henson v. State, 236 Md. 518, 523, 204 A. (2d) 516, 519:

"'* * * Practicalities and exigencies in searches for narcotics require the element of surprise entry, for if opportunity is given all evidence easily may be destroyed during the time required to give notice, demand admittance and accept communication of denial of entry. As one commentator said:

" '* * * it would seem that the perfection of small firearms and the development of indoor plumbing through which evidence can quickly be destroyed, have made [statutes requiring notice and entry before the use of force to enter] * * * a dangerous anachronism. In many situations today * * *, a rule requiring officers to forfeit the valuable element of surprise seems senseless and dangerous.'
"Kaplan, *Search and Seizure, A No-Man's Land in the Criminal Law*, 49 Cal. L. Rev. 474, 502."

The views expressed by the Maryland court were echoed in State v. Johnson, 102 R. I. 344, 230 A. (2d) 831. In that case the court refused to suppress evidence seized after the officer failed to announce his authority or purpose, holding that in those particular circumstances the announcement would very likely have resulted in the destruction of narcotics. There the defendant was a known criminal with a past record of violence, and the court stressed the exigencies present and the necessity for surprise and alacrity to accomplish the purpose of the search.

We do not intend to adopt a blanket rule in all gambling and narcotics

cases excusing the requirement that officers announce their authority and purpose before entering a suspect's home. We agree with the decisions in United States v. Blank (N. D. Ohio) 251 F. Supp. 166, and People v. Rosales, 68 Cal. (2d) 299, 66 Cal. Rptr. 1, 437 P. (2d) 489, which decline to accept such noncompliance merely because certain classes of persons subject to arrest are more likely than others to destroy evidence. We believe the more rational policy is that followed in the New York Court of Appeals in People v. De Lago, 16 N. Y. (2d) 289, 266 N.Y. S. (2d) 353, 213 N. E. (2d) 659. There the court permitted an entry without an announcement of authority and purpose where the search warrant itself contained the following authority (16 N. Y. [2d] 292, 266 N. Y. S. [2d] 356, 213 N. E. [2d] 661):

"* * * 'Sufficient proof having been given under oath that the gambling records and other paraphernalia sought may easily and quickly be destroyed and disposed of, the executing peace officer is not required to give notice of his authority and purpose prior to executing this order.' "

In summary, we hold that where the affidavit in support of a petition for a search warrant sets forth "exigent circumstances" with sufficient particularity to justify dispensing with the necessity for announcing authority and purpose, and the issuing magistrate includes in the search warrant specific authority to enter the premises without such an announcement, the entry is lawful and evidence thus obtained is not inadmissible on that account. Where the evidence presented to the issuing magistrate discloses facts which are reliably documented and furnish the magistrate with a substantial basis for believing that an announcement will result in the destruction of evidence, the magistrate is authorized to include in the warrant authority to dispense with the announcement. While we do not attempt to catalog all of the factors which are relevant in such cases, the intensity of the surveillance, the reliability of the informant, the corroborating evidence recited, and the criminal record of the defendant are some of the obvious considerations which will govern the magistrate's decision.

Here we are of the opinion that the affidavit would have been sufficient to justify such a warrant. We therefore hold that the entry with-

out an announcement was lawful and the evidence thus obtained was not inadmissible.

Our decision is not to be construed as a finding that the affidavit in support of the petition for a warrant is a model to be followed in all such cases. We simply hold it was here adequate. Nor do we suggest that searches heretofore conducted by unannounced entries without authority of the issuing magistrate are necessarily invalid for that reason. The rule we now adopt applies only prospectively to searches hereafter conducted. The order of the trial court suppressing the evidence seized is accordingly reversed.

Reversed.

### APPENDIX

STATE OF MINNESOTA                                         MUNICIPAL COURT
COUNTY OF RAMSEY                                           CITY OF SAINT PAUL
#### AFFIDAVIT AND PETITION FOR SEARCH WARRANT

Robert P. Kunz, being duly sworn, on oath alleges and makes complaint in writing to the above-named Court and says that he is a peace officer in the County of Ramsey, State of Minnesota, employed by the City of Saint Paul as a Police Officer.

That affiant is informed and verily believes that there is being kept and stored on the premises at 649 Selby Avenue, a restaurant named DOJO'S Submarine Shop, a quantity of narcotics, Dangerous drugs, and drug dispensing equipment;

Affiant further states that he has personally conducted surveillance of the above premises numerous times within the past several weeks and is personally aware of persons known to use narcotic drugs entering said premises; that his personal observations of said persons entering said premises have been frequent; and other members of the Vice Unit of the City of Saint Paul have similarly conducted surveillances of the above premises and made similar observations on a frequent basis;

Affiant further states that in the course of his duties, he has, within the past three weeks, talked to an informant regarding the traffic in narcotics and dangerous drugs being carried on at restaurant located at 649 Selby Avenue; that this informant has on previous occasions given

affiant true and accurate information; that affiant believes the informant to be reliable; that the informant told the affiant that he has personally visited the establishment and has seen narcotics purchased therein, namely heroin; that the transactions are made in the backroom where the buyer can either purchase and carry out the narcotic or have it administered by injection while on the premises;

Affiant further states that Geraldine and Samuel Parker, the operators of the establishment, are keeping and selling the narcotics and dangerous drugs (amphetamines and Barbiturates).

Also, Samuel Parker or wife owns a 1967 Lincoln, Minn. Lic. No. 4 FV 459 which is said to be used to transport and make sales of narcotics. This information has been given to the police department by the above mentioned informant.

That affiant has good reason to believe, and does believe, that said personal property or things are now concealed or will be concealed on the premises of the restaurant located at 649 Selby Avenue, and the 1967 Lincoln of Samuel Parker, Minn. Lic. No. 4 FV 459 in the City of Saint Paul, County of Ramsey, State of Minnesota. That affiant further believes that to prevent loss, destruction or removal of the property the search must necessarily be made in the nighttime.

That said affiant's Petition for search warrant is made upon (information) resulting from his own (investigation).

WHEREFORE, SAID AFFIANT PRAYS that a search warrant be issued directing, authorizing and commanding Robert P. Kunz, a peace officer in the County of Ramsey, State of Minnesota, to enter into the business establishment located at 649 Selby, and the 1967 Lincoln of Samuel Parker, Minn. Lic. No. 4 FV 459 and search for the following property or things, to-wit:

Narcotics
Dangerous Drugs
Drug Dispensing Equipment

/s/ Robert P. Kunz
Sgt. Robert P. Kunz

State of Minnesota )
                   ) SS.
County Of Ramsey )

Robert P. Kunz, being first duly sworn upon oath deposes and says that he has read the foregoing complaint and the matters therein stated are true and correct except as to such matters stated therein on information and belief, and as to such he believes them to be true.

/s/ Robert P. Kunz

Subscribed and sworn to before
me this 26th day of March 1968.

/s/ James M. Lynch
Judge of Municipal Court