STATE of Minnesota, Appellant,

v.

Douglas W. WHELAN, Respondent.

STATE of Minnesota, Appellant,

v.

Robert E. CARLSON, Respondent.

STATE of Minnesota, Appellant,

v.

Donald W. WARNER, Respondent.

Nos. CX–84–290, C1–84–291, and C3–84–292.

Court of Appeals of Minnesota.

June 19, 1984.

Paul G. Morreim, Freeborn County Atty., Albert Lea, for appellant.

Stephen R. Erickson, Albert Lea, for respondent Donald W. Warner, Phillip A. Kohl, Albert Lea, for respondent Douglas W. Whelan, Jamie A. Kyllo, Albert Lea, for respondent Robert E. Carlson.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

These three cases have been consolidated for appeal. At the omnibus hearing, the trial court suppressed evidence and dismissed the case against the defendants. The State appeals under Rule 28.04(1) of the Minnesota Rules of Criminal Procedure. We affirm.

## FACTS

On August 16, 1983, an informant told a Freeborn County Sheriff that he had just seen "a large, zip lock baggie which appeared to contain in excess of two ounces of marijuana" and other paraphernalia in a house rented by Doug Whelan. The marijuana was to be divided and sold, according to the informant.

The sheriff prepared an affidavit and requested a search warrant. On the basis of the affidavit, a judge issued a warrant to search Whelan's house. Provision was made in the warrant to search at night, but it made no provision for a "no-knock" entry.

Four sheriffs went to assist in the search. One had been to the house a week before and knew a number of people lived there. They shut off their car lights and drove up the driveway with the aid of flashlights. It was 11:30 at night, but the farmhouse was quiet. Several cars were parked by the house, but no one was in them. A light was on in the house, but no one could be seen. One of the officers testified that the deputies noticed nothing unusual about the house prior to entering. The officer in charge testified that, upon arrival, he learned nothing about the situation that he had not known when applying for the warrant.

The sheriffs decided to split up: two would enter through the back door, two through the front door. When positioned, one of the officers banged three times on the front door, opened it, and shouted, "Sheriff's Office." Upon hearing the shout, the sheriffs at the back door charged in. None of the sheriffs drew their guns or were in any apparent fear. One of the sheriffs ran upstairs and found the defendants in a room. In addition to the defendants, he found and seized over a kilo of marijuana and other paraphernalia.

The trial court ruled that the sheriffs improperly entered the house without announcing their presence and suppressed all evidence obtained in the search. Since the

only evidence in the case was a result of the search, the State was left without a case and the trial court dismissed the charges. The State appeals.

### ISSUES

1. Has the State shown that the suppression of this evidence will have a critical impact on the trial?

2. Has the State shown that the trial court erred?

### ANALYSIS

◼ Before this court can reverse a trial court's pretrial determination, the State must demonstrate "clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977); *State v. Pelovsky*, 347 N.W.2d 529, 533 (Minn.Ct. App.1984).

#### 1. *Critical Impact on the Trial*

The trial court suppressed all evidence and dismissed the case because it ruled the entry illegal. Suppression of this evidence has had a critical impact on the trial.

#### 2. *Exclusion of Evidence because of "No-Knock" Entry*

◼ The State argues that there is no specific statutory or constitutional authority for requiring an officer to announce his presence. The Minnesota Supreme Court, however, requires officers to identify themselves before executing either a search or an arrest warrant. *State v. Linder*, 291 Minn. 217, 190 N.W.2d 91 (1971) (search and arrest warrants); *State v. Parker*, 283 Minn. 127, 166 N.W.2d 347 (1969) (search warrant). In *Parker*, the Minnesota Supreme Court traced the history of the rule from *Semayne's Case* in 1603 to *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828, in 1968. *Parker*, 283 Minn. at 130–34, 166 N.W.2d at 350–52. As noted by William Pitt during a debate in Parliament:

> The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!

The Oxford Dictionary of Quotations [2d ed.] at 379, *quoted in, Parker*, 283 Minn. at 131, 166 N.W.2d at 350.

◼ The Minnesota Supreme Court has clearly stated the principles governing unannounced entries by peace officers:

> First, when police seeking a search warrant have reason to believe that an unannounced entry will be required in order to successfully and safely execute the warrant, they must inform the issuing magistrate of the circumstances which they believe justify the unannounced entry and obtain specific advance authorization for it.

> Second, in order to obtain such authority the police must make a strong showing that an announced entry will result in the destruction of evidence or in danger to the officers executing the warrant.

> a. In this regard, the officer must do more than simply make a showing that drugs are involved. In fact, we question whether an unannounced entry clause can ever be justified in a warrant to search a dwelling for drugs when there is no indication that the drugs are other than for personal use and where there is no averment of specific facts indicating that an unannounced entry is needed in order to safely and successfully execute the warrant.

> b. However, if the affidavit contains a showing of necessity—e.g., a showing that the occupants are prepared to destroy evidence whenever the search warrant is executed or that the dwelling is being used also as an outlet or a warehouse for a drug business—then the request for the unannounced entry clause should be granted.

> The third governing principle is that even if police obtain advance judicial authori-

zation for an unannounced entry into a dwelling, the police still should make a threshold reappraisal of the need to execute the warrant in this manner.

The fourth governing principle is that if police have no reason to seek advance authorization or if advance authorization is denied, the police still may make an unannounced entry to execute the warrant if facts arising at the threshold strongly indicate that an unannounced entry is necessary in order to safely or successfully execute the warrant.

*State v. Lien,* 265 N.W.2d 833, 838–39 (Minn.1978).

 An officer's belief that exigent circumstances exist must be based on fact. As the California Supreme Court has noted:

> when the officer acts on a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. Such a belief, however, must be based on the facts of the particular case. It cannot be justified by a general assumption that certain classes of persons subject to arrest are more likely than others to resist arrest, attempt to escape, or destroy evidence.

*People v. Rosales,* 68 Cal.2d 299, 437 P.2d 489, 66 Cal.Rptr. 1 (1968). The Minnesota Supreme Court has likewise rejected a blanket rule:

> We do not intend to adopt a blanket rule in all gambling and narcotics cases excusing the requirement that officers announce their authority and purpose before entering a suspect's home.

*Parker,* 283 Minn. at 135–36, 166 N.W.2d at 352.

The State claims that the sheriffs faced a bizarre situation requiring an entry without announcement. Cars were in the driveway of a house where a number of people lived, but no one was in them; a light was on in the house, but no one could be seen; it was 11:30 p.m., but the farm house was quiet. If such a pastoral scene presents a bizarre situation causing officers to fear for their lives or the destruction of evidence, officers would be able to break into a house unannounced any time they have a warrant.

## DECISION

The trial court correctly excluded the evidence taken as a result of the unannounced entry.

Affirmed.