STATE of Minnesota, Respondent,

v.

Eddy Marshall BOTELHO, Appellant.

No. C3–01–198.

Court of Appeals of Minnesota.

Jan. 2, 2002.

Mike Hatch, Attorney General and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant Ramsey County Attorney, St. Paul, for respondent.

Barry V. Voss, Timothy J. Hickman, Voss & Hickman, P.A., Minneapolis, for appellant.

Considered and decided by CRIPPEN, Presiding Judge, ANDERSON, Judge, and HUSPENI, Judge.*

G. BARRY ANDERSON, Judge.

## OPINION

The district court found appellant guilty of second-degree possession of cocaine after appellant entered a Lothenbach stipulation. Appellant appeals the district court's denial of his motion to suppress evidence seized in connection with a search of his residence on three grounds: (1) that the search warrant for appellant's residence was not supported by probable cause; (2) that the search-warrant application did not state a sufficient factual basis to support reasonable suspicion of a threat to officer safety, or a likelihood that evidence would be destroyed, justifying an unannounced entry; and (3) that the officers failed to reappraise the circumstances adequately before executing the unannounced entry. Because the factual basis in the search-warrant application does not support reasonable suspicion of a threat to officer safety, or a threat of destruction of evidence, justifying an unannounced entry, we reverse.

## FACTS

In September 1999, a St. Anthony police officer was informed that a concerned citi-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

zen had reported suspicious activity at appellant's residence. The suspicious activity consisted of multiple cars frequenting the residence, stopping only briefly, at all hours of the day. The citizen and St. Anthony police officers immediately began to monitor and record the vehicles' license-plate information.

The officer initiated a criminal investigation and discovered that in July 1999, an alleged assault occurred at appellant's residence. According to the police report, the alleged assault victim declined to press charges, but told police that drugs were present and used at appellant's residence. The officer subsequently conducted a garbage search and found, among other things, "small round pieces of tin foil that had holes punched in them with a burned residue on top." The residue tested positive for cocaine.

In October 1999, a few days after he conducted the garbage search, the officer requested district court approval of a search warrant for appellant's automobile and residence. The officer's application stated that he believed narcotics and controlled substances were present at appellant's residence and in appellant's automobile. The officer also requested the district court authorize an unannounced, or "no-knock," entry, "to ensure the safety of the officers * * * and to avoid the destruction and/or removal of the contraband and evidence therein." The officer further stated in his application:

> An unannounced entry is necessary (to prevent the loss, destruction or removal of the objects of the search [and] to protect the safety of the peace officers) because:

Your affiant has learned that illegal drugs are being used at this address, and due to the easy availability of the destruction of these drugs, and the practice of drug dealers being armed with weapons. Furthermore, your affiant has also learned that people frequenting the address having [sic] dangerous weapon criminal histories as well as histories reflective of obstructing legal process.

(First alteration in original.) [1] Based solely on the officer's application, the district court approved the search warrant and the unannounced entry.

On October 8, 1999, at approximately 9:00 a.m., the police executed the search warrant. The officer approached the front door of the residence and, using a sledge-hammer, proceeded to break down the door. Officers entered the residence, announced their presence, arrested appellant, and seized approximately 7.2 ounces of cocaine and a large amount of cash from a bedroom safe.

The state charged appellant with second-degree possession of cocaine, a violation of Minn.Stat. § 152.022, subds. 2(1), 3(a) (1998). At an omnibus hearing, the officer testified as described above and confirmed that, as part of his preliminary investigation, he checked the license plates of the vehicles frequenting appellant's residence and determined that the vehicles were registered to individuals with criminal histories that included drug, dangerous weapons, and obstructing legal process offenses. The officer also admitted that the officers performed a cursory reappraisal of the need for the unannounced entry before breaking down appellant's door. The officer testified that

---

**1.** Earlier in the application the officer alleged that the registered owners of the vehicles frequenting the residence had "extensive criminal drug histories" and had "burglary arrests, forgery arrests, financial transaction card fraud, dangerous weapons, and obstructing legal process" histories.

we looked at the property itself. I put the officers in position. We didn't see that the door was open or that there was any other way of entering the place, and then [we] decided to go ahead and force open the door as directed by the search warrant.

But the officer did not verify whether the individuals frequenting the residence were the vehicles' registered owners with criminal histories. The officer admitted that he had no specific knowledge that the individuals entering appellant's residence, or appellant, possessed weapons on their person. The officer also admitted that he had no particular information to make him suspect that the individuals inside the residence would destroy drugs upon execution of a search warrant; rather, the officer stated that he knew from his significant experience as a police officer that cocaine, the drug he was searching for, was readily disposable.

## ISSUES

I. Was the search warrant for appellant's residence supported by probable cause?

II. Did the search-warrant application state a sufficient factual basis to support reasonable suspicion that an unannounced entry was justified?

III. Did the officers fail to reappraise the circumstances adequately before executing the unannounced entry?

## ANALYSIS

I. Was the search warrant for appellant's residence supported by probable cause?

Appellant first argues that the search warrant for his residence was not supported by probable cause because the search-warrant application relied on citizen informants whose credibility was unconfirmed. Appellant argues that the officer's application contains less information than the application at issue in *State v. Albrecht*, 465 N.W.2d 107, 109 (Minn.App. 1991), where this court found a lack of probable cause for police to search a residence for drugs.[2] The officer's application, according to appellant, contains "no independent substantiation of either the unidentified citizen's information or that of the alleged and unidentified assault victim's information." Appellant argues that in order to establish the informants' credibility, the application must provide a judge with enough information for her to assess the informants' credibility.

■■■ The United States and Minnesota constitutions protect citizens from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Minn. Const. art. I, § 10. "With a few exceptions, a search is valid only if it is conducted pursuant to a valid search warrant." *Albrecht*, 465 N.W.2d at 108 (citation omitted). A search warrant must be supported by probable cause. Minn.Stat. § 626.08 (1998); *State v. Wiley*, 366 N.W.2d 265, 268 (Minn.1985) (holding that "the pres-

2. In *Albrecht*, this court found that an anonymous tip that alerted police that Albrecht was a marijuana dealer, that described the interior of Albrecht's residence, that stated that Albrecht owned a red-and-white pickup truck, and that directed police to Albrecht's residence, was insufficient to establish probable cause for a search warrant. *Albrecht*, 465 N.W.2d at 108–09. The officer in *Albrecht* did not seek to corroborate the credibility of the informant, but rather merely verified whether Albrecht owned a red-and-white truck and whether the tip correctly described Albrecht's address. *Id.* at 109. This court found that because the "facts corroborated were easily obtained facts and conditions which by themselves [were] inadequate to support a finding of probable cause," without more, the facts were insufficient to establish probable cause. *Id.*

ence of probable cause should be determined under a 'totality of the circumstances' test" (quotation omitted)). This court

> reviews a district court's decision to issue a warrant only to consider whether the issuing judge had a substantial basis for concluding that probable cause existed.

*State v. Rochefort,* 631 N.W.2d 802, 804 (Minn.2001) (citation omitted).

■ "Substantial basis" in this context means a "fair probability," given the totality of the circumstances, "that contraband or evidence of a crime will be found in a particular place." *State v. Zanter,* 535 N.W.2d 624, 633 (Minn.1995) (quotations and citations omitted). When we review "the sufficiency of an affidavit under the totality of the circumstances test," we must not "review each component of the affidavit in isolation." *Albrecht,* 465 N.W.2d at 109 (citation omitted). This court's standard of review, therefore, affords the district court great deference and is not de novo. *See Rochefort,* 631 N.W.2d at 804–05; *State v. McCloskey,* 453 N.W.2d 700, 704 (Minn.1990) (suggesting "that the resolution of marginal cases should be 'largely determined by the preference to be accorded to warrants' " (quotation omitted)).

■ The officer's application stated four primary facts that made the officer suspect that drugs were present in appellant's residence: (1) multiple vehicles frequenting the residence at all hours of the day; (2) the criminal drug histories of the vehicles' registered owners; (3) the late July 1999 double-hearsay statement by the alleged assault victim that alleged that drugs were present and used in appellant's residence; and (4) the garbage search that uncovered cocaine residue on tin foil among appellant's personal effects.

We conclude that the district court had a substantial basis for concluding that probable cause existed to search appellant's residence.

First, the concerned citizen only knew that multiple vehicles frequented appellant's residence for short periods, at all hours of the day. Indeed, the officer's application recognized that the citizen was "worried about the possibility of narcotics trafficking occurring at the residence." The citizen had no specific firsthand knowledge of what was occurring inside appellant's residence; therefore, any belief that the suspicious traffic was drug-related was mere speculation, although this court has found that "incessant traffic of brief visits to [a] residence [may be] very significant" to a probable-cause determination. *State v. Anderson,* 439 N.W.2d 422, 426 (Minn.App.1989) (quotation omitted), *review denied* (Minn. June 21, 1989).

Second, the statement from the alleged assault victim took place over two months earlier and was arguably stale. *See State v. Souto,* 578 N.W.2d 744, 750 (Minn.1998) (" '[T]he proof must be * * * closely related to the time of the issue of the warrant * * * to justify a finding of probable cause at that time.' " (quoting *Sgro v. United States,* 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932)) (alteration in original)).

■ But we need not decide whether the suspicious traffic and the hearsay statement alone provided the district court a substantial basis to conclude that probable cause existed to search appellant's residence because the garbage search is crucial to the probable-cause determination. As the officer stated in his application, he conducted the garbage search after other evidence made him suspect drug activity at appellant's residence. *See State v. Richardson,* 514 N.W.2d 573, 579 (Minn.App. 1994) ("Although police officers may rely

on training and experience to draw inferences and make deductions, mere suspicion does not equal probable cause." (citing *State v. Skoog*, 351 N.W.2d 380, 381 (Minn.App.1984))). The officer's garbage search uncovered tin foil and suspicious residue, later confirmed to be cocaine residue.[3]

The cocaine residue, accompanied by appellant's personal effects, independently corroborated the officer's suspicion that drugs were present in appellant's residence, and, therefore, we conclude that the district court had a substantial basis for concluding that probable cause existed to search appellant's residence for drugs. *See McCloskey*, 453 N.W.2d at 704 (stating that independent corroboration of an anonymous tip is a relevant factor in "making the totality-of-the-circumstances assessment of probable cause").

II. Did the search-warrant application state a sufficient factual basis to support reasonable suspicion that an unannounced entry was justified?

Appellant argues that the unannounced entry was not justified, and therefore illegal, because the officer's application alleged no facts to justify an unannounced entry and was conclusory and misleading. Appellant argues that the officer only suspected that drug use occurred at appellant's residence and that allegations of drug dealers and "the practice of drug dealers being armed with weapons" was misleading speculation. Moreover, appellant contends that the officer admitted that he had not confirmed whether the individuals frequenting appellant's residence were the vehicles' owners with drug, dangerous weapons, and obstructing legal pro-

cess histories. Appellant argues that this admission contradicts the officer's application statement that "people frequenting the address hav[e] dangerous weapon criminal histories as well as histories reflective of obstructing the legal process."

■■■■ "Where the material facts are not in dispute, this court independently reviews whether a no-knock entry was justified." *State v. Barnes*, 618 N.W.2d 805, 810 (Minn.App.2000) (citing *State v. Wasson*, 615 N.W.2d 316, 320 (Minn.2000)), *review denied* (Minn. Jan. 16, 2001).

> Inquiry into the need for an unannounced entry is included in the reasonableness inquiry into the warranted search under the Fourth Amendment of the U.S. Constitution.

*Garza v. State*, 632 N.W.2d 633, 638 (Minn. 2001) (citation omitted); *see also Wasson*, 615 N.W.2d at 320 (citing *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976 (1995)). Under this reasonableness inquiry, our supreme court has recently reaffirmed that

> the police [must] inform the issuing magistrate of the circumstances that they believe justify the unannounced entry and [must] obtain specific advance authorization for an unannounced entry.

*Wasson*, 615 N.W.2d at 320 (citation omitted); *see also Garza*, 632 N.W.2d at 638 ("Facts justifying an unannounced entry must be presented to the magistrate at the time of the application." (citation omitted)). Judicial pre-approval is relaxed only where an unapproved, unannounced entry is "necessary for a safe and successful execution of the warrant." *Wasson*, 615 N.W.2d at 320 n. 2 (citation omitted).

---

**3.** Appellant does not contest the constitutionality of the officer's garbage search. It is well-established that garbage searches are constitutional in most cases. *See, e.g., State v.*

*Krech*, 403 N.W.2d 634, 636 (Minn.1987); *State v. Oquist*, 327 N.W.2d 587, 590 (Minn. 1982).

■ Factors that justify an unannounced entry include the likelihood of destruction of evidence and a threat to the safety of the officers executing the warrant. *Id.* at 320–21 (safety of officers); *State v. Parker,* 166 N.W.2d 347, 353, 283 Minn. 127, 136 (1969) (destruction of evidence).

■ The United States Supreme Court, however, "has rejected a blanket exception to the knock-and-announce rule * * * for all felony drug cases." *Barnes,* 618 N.W.2d at 811 (citing *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997)). Our supreme court has also rejected a blanket exception for felony-drug cases:

> "[P]olice must have a *reasonable suspicion* that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."

*Wasson,* 615 N.W.2d at 320 (emphasis added) (quotation omitted). Consequently,

> boilerplate language in the search warrant affidavit does not satisfy the requirement for a showing, particular to the search at issue, that announcing would be dangerous or allow the destruction of evidence.

*Id.; see also Garza,* 632 N.W.2d at 638. Therefore, the supreme court has recently reaffirmed that

> under the Supreme Court ruling in *Richards* requiring a showing of need "under particular circumstances," * * *

a generalized showing of drug trafficking is not sufficient justification for an unannounced entry because evidence of drug trafficking does not, *ipso facto,* equate to a conclusion that an announced entry would be dangerous or futile, or that it would result in the destruction of evidence. While the showing required to justify an unannounced entry is not high, * * * there [must be a] particularized showing of dangerousness, futility or destruction of evidence * * *.

*Garza,* 632 N.W.2d at 638 (citation omitted).[4] Therefore, police must have reasonable suspicion of a threat to officer safety or the likelihood of destruction of evidence, and this reasonable suspicion must be supported by a *particularized* showing of dangerousness, futility, or likelihood of destruction of evidence.

■ The supreme court, however, has cautioned that this court

> may accept evidence of a threat to officer safety of a less persuasive character when the officer presents the request for a no-knock warrant to a magistrate.

*Wasson,* 615 N.W.2d at 321. Consequently, when an officer complies with established procedure and obtains judicial pre-approval for an unannounced entry, this "weighs against excluding the evidence seized." *Id.*

It is also useful to consider our supreme court's decision in *State v. Wasson* and this court's decision in *State v. Barnes.* The *Wasson* court found there was reasonable suspicion of a threat to officer safety be-

---

4. The *Garza* court also noted:

The only expression of need for an unannounced search was in general terms, that "Persons involved in Drug trafficking will destroy evidence * * * [and] will use violence" with no factual nexus to particularized facts of dangerousness, futility or destruction of evidence related to the search of respondents' residence. We conclude the evidence of drug trafficking in the affidavit does not meet the particularized circumstances standard in *Richards* and *Wasson.*

*Garza,* 632 N.W.2d at 638 (alteration in original).

cause (1) "numerous weapons were seized from the exact location just three months earlier" and because (2) drugs were being sold at the residence "to at least [an informant] and perhaps others." *Wasson*, 615 N.W.2d at 320–21.

In *Barnes*, this court concluded that an unannounced entry was justified because there was evidence of drug dealing, gang affiliation, and because defendant "had a prior criminal record and that the level of drug trafficking was very high." *Barnes*, 618 N.W.2d at 812. The *Barnes* court specifically recognized,

> The search warrant application * * * established more than the fact that * * * [the] residence [was] involved in suspected drug dealing. The warrant also established that Barnes, a known gang member with a record of incarceration, had been observed with other individuals in what appeared to be an extensive drug dealing operation involving large amounts of cocaine.

*Id.* at 811.

■ Here, the officer requested an unannounced entry because (1) unidentified periodic visitors with equally unidentified drug, dangerous weapons, and obstructing legal process histories and (2) "the practice of drug dealers being armed with weapons" threatened officer safety. The application also requested an unannounced entry in boilerplate language ("due to the easy availability of the destruction of these drugs") alleging that it was likely destruction of evidence could easily occur with an announced entry.

We first recognize that *Wasson's* extreme deference supports the arguably defensible view that the officer had some suspicion that there was a hypothetical threat to officer safety, at least because of the individuals with drug, dangerous weapons, and obstructing legal process histories periodically frequenting the residence.

We conclude, however reluctantly, that the allegations in the application are not sufficiently particularized to support reasonable suspicion of a threat to officer safety or a threat of destruction of evidence.

First, although we believe it was reasonable for the officer to assume that the vehicles' registered owners with criminal histories were the actual individuals frequenting appellant's residence, the officer's application does not go much further.

*Richards*, *Wasson*, and *Garza* require a *particularized* showing of dangerousness. The application does not mention the specific offenses constituting the visitors' drug, dangerous weapons, and obstructing legal process histories. There are no specific allegations of when, or under what circumstances, these offenses occurred. There is no factual basis in the application that appellant, or any individual frequenting appellant's residence, was armed, or that weapons, brought by anyone, were ever located in the residence. The application falls short of the showing made in *Barnes*, which related to the defendant's own gang membership and criminal history. The application's reliance on the characteristics of appellant's apparent customers or associates does not provide significantly more support than the generalizations in *Richards*.

The officer also inferred that it would be particularly dangerous to announce the officers' presence because of the "practice of drug dealers being armed with weapons." But the application does not allege that appellant or the visitors to appellant's residence were drug dealers, or, more specifically, armed drug dealers. The factual allegations at most support a conclusion that individuals with criminal histories were using drugs, perhaps heavily, at appellant's residence. *See Wasson*, 615

N.W.2d at 320 (stating that "[t]o substantiate the need for a no-knock warrant an officer must establish more than that drugs are involved"); *State v. Martinez,* 579 N.W.2d 144, 147–48 (Minn.App.1998) (language in application that drug traffickers "are often armed with firearms and other dangerous weapons and will use these weapons" is not sufficiently particularized (quotation omitted)), *review denied* (Minn. July 16, 1998).

■ Moreover, even if we assume appellant engaged in drug trafficking, this fact alone, without a particularized showing of dangerousness, futility, or the likelihood of destruction of evidence, cannot support an unannounced entry. *See Garza,* 632 N.W.2d at 638 n. 1 ("To the extent [that our previous cases] can be understood to authorize an unannounced entry on a showing only that the premises were used for drug trafficking, [they] are overruled."); *see also United States v. Tavares,* 223 F.3d 911, 917 (8th Cir.2000) (where officer "did not have any information that [defendant] was known to use weapons, that he was armed or carried a weapon, or that he had a history of violence toward law enforcement officers," the application did not justify an unannounced entry); *State v. Eason,* 245 Wis.2d 206, 629 N.W.2d 625, 635 (2001) ("vague and somewhat outdated" arrest records of targeted drug dealers and users insufficient to establish reasonable suspicion for an unannounced entry).

Second, the officer articulated his concern for the destruction of evidence using boilerplate language: "due to the easy availability of the destruction of these drugs." This type of language has been consistently rejected by the supreme court as insufficient to justify an unannounced entry. *Wasson,* 615 N.W.2d at 320.

Therefore, this case differs in several significant ways from *Wasson* and *Barnes.*

In *Wasson* and *Barnes,* the factual allegations supported reasonable suspicion, through a particularized showing of dangerousness, because either several significant factors suggested there was a threat to officer safety (*Barnes*) or there was evidence that the residence to be searched recently contained numerous weapons (*Wasson.*)

■ By concluding that the allegations in the warrant application are not sufficient to support a particularized showing of dangerousness to officer safety, we are mindful of why the United States Supreme Court rejected Wisconsin's blanket exception to the knock-and-announce requirement, which permitted unannounced entries for *all* felony-drug cases, and adopted a "case-by-case evaluation of the manner in which a search [is] executed." *Richards,* 520 U.S. at 392, 117 S.Ct. at 1420 (footnote omitted). The *Richards* Court cautioned that creating a felony-drug exception to respond to today's "drug culture" risks overgeneralizing the myriad circumstances under which felony-drug investigations arise, *id.* at 392–93, 117 S.Ct. at 1420–21 and, if adopted, such an exception could easily be applied to other areas of criminal activity where the participants are likely to have weapons and therefore pose a hypothetical danger to officer safety. *Id.* at 394, 117 S.Ct. at 1421. As the Supreme Court concluded,

> If a *per se* exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless.

*Id.*

Although the factual basis required for an unannounced entry is not high, we con-

clude the very limited and vague allegations in the warrant application at issue here do not meet the particularized-showing-of-dangerousness standard articulated by the *Richards* Court and by our supreme court in *Wasson* and *Garza.* Instead, to uphold the allegations in the case as sufficiently particularized would be a first step in creating a de facto bright-line exception for felony-drug cases, and, consequently, would render *Richards's* admonitions meaningless.

Under *Richards, Wasson,* and *Garza,* however, we do not attempt to delineate a bright-line rule in this extremely fact-specific area of law, nor should we attempt such an undertaking. *See Barnes,* 618 N.W.2d at 812 ("We need not decide whether a no-knock entry could be based solely on evidence of drug dealing and gang affiliation."). We simply conclude that allegations in a search warrant application that "the practice of drug dealers being armed with weapons" and that unidentified "people frequenting the address hav[e] dangerous weapon criminal histories as well as histories reflective of obstructing the legal process" are not sufficiently detailed to support a particularized showing of dangerousness to officer safety. Therefore, the unannounced entry was not supported by reasonable suspicion and was not justified. Consequently, the evidence found in appellant's residence must be suppressed.

III. Did the officers fail to reappraise the circumstances adequately before executing the unannounced entry?

Appellant argues, in the alternative, that if the officer's application originally justified an unannounced entry, the officers failed to reappraise the circumstances adequately before executing the unannounced entry.

Although a district court may approve a request for an unannounced entry, officers should still "make a 'threshold reappraisal of the need to execute the warrant in this manner.'" *Wasson,* 615 N.W.2d at 322 (quotation omitted); *see also Barnes,* 618 N.W.2d at 812. The *Wasson* court emphasized that "officers 'should' make this appraisal" but did not "[announce] a hard and fast rule that the reappraisal is required in every case." *Wasson,* 615 N.W.2d at 322. Where officers do reappraise the circumstances, we must "independently determine whether what the officers observed [before making the unannounced entry] demonstrated that an unannounced entry was improper." *Id.* (citation omitted).

The officer testified that the officers "looked at the property itself." He recalled that he "didn't see that the door was open or that there was any other way of entering the place, and then [we] decided to go ahead and force open the door as directed by the search warrant." Therefore, the reappraisal was brief and did not alert the officers to any change in circumstances.

We conclude that under *Wasson,* appellant's argument that the officers failed to reappraise the circumstances adequately must fail. We recognize that *Wasson's* reappraisal standard is extremely deferential. In *Wasson,* the warrant application requested an unannounced entry at night based on (1) ongoing drug activity and (2) the presence of numerous weapons found during an unrelated search three months before the unannounced entry at issue. *Wasson,* 615 N.W.2d at 320–21. In executing the warrant in *Wasson,* officers approached the home and noticed the owner and Wasson sitting at a table. *Id.* at 322. The two men did not seem threatening. The supreme court, however, found that

nothing the officers observed contradicted their belief that weapons were present, or provided additional information to suggest there was no threat to officer safety. The officers were not required, based on their threshold reappraisal, to abandon the plan for an unannounced entry.

*Id.*

 If there is no affirmative change in circumstances to suggest that officers need not conduct an unannounced entry, *Wasson* mandates that officers need not abandon their original plan for an unannounced entry.

Because the officers had no reason to believe the circumstances had changed from the circumstances outlined in the warrant application, they were under no obligation to abandon their original plan, and the reappraisal here met the minimal standard established by *Wasson*.

### DECISION

Evidence of multiple vehicles frequenting appellant's residence at all hours of the day, a hearsay statement in a police report stating that drugs were present and used at appellant's residence, and cocaine residue found in appellant's garbage, along with appellant's personal effects, provided a substantial basis for the district court to conclude that there was probable cause to search appellant's residence for drugs.

But there was an insufficient factual basis in the search-warrant application to justify an unannounced entry because a mere allegation that individuals with drug, dangerous weapons, and obstructing legal process histories frequented appellant's residence is not a particularized showing of dangerousness sufficient to support reasonable suspicion of a threat to officer safety. Finally, the officers adequately re-

appraised the necessity of the unannounced entry.

**Reversed.**