STATE of Minnesota, Appellant,

v.

Howard Elmer ANDERSON, Respondent.

No. CO-85-1426.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Review Granted March 14, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, R. Kathleen Morris, Scott Co. Atty., Shakopee, for appellant.

C. Paul Jones, Public Defender, Kathy King, Mark F. Anderson, Asst. Public Defenders, Minneapolis, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Respondent Howard Elmer Anderson was charged with one count of intrafamilial sexual abuse in the second degree, in violation of Minn.Stat. § 609.3642, subd. 1(1) (1984), and one count of criminal sexual conduct in the fourth degree, in violation of Minn.Stat. § 609.345(b) (1984). The state appeals, pursuant to Minn.R.Crim.P. 28.04, subd. 1, from a pretrial order of the district court, Scott County, suppressing statements made by the respondent to an officer of the Savage police department. The district court found that the statements were involuntary because they were the product of inducements made by the police officer.

After briefing on this appeal was completed, respondent moved this court to dismiss the state's appeal for failure to address the issue whether the suppression order will have a critical impact on the outcome of the trial. *See State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977). The state's brief did not address the issue, but the state moved to amend its appeal, and

submitted a memorandum on the critical impact issue. On October 16, 1985, this court ordered that decision on respondent's motion to dismiss and the state's motion to amend be deferred until consideration of this appeal on the merits. We deny respondent's motion and grant the state's motion to amend.

## FACTS

On the night of October 8, 1984, according to the complaint in this case, Mrs. Judy Anderson awoke in her home in Savage, Minnesota, and noticed that the door to her 14-year-old daughter's room was open. Because this was unusual, she got out of bed to investigate. When she got to her daughter's room, she saw her 20-year old son, the respondent, kneeling beside his sister's bed. The girl awoke and as she sat up, her mother could see that her breasts were bared. The girl began to cry and said that respondent had "his mouth on my breast." Respondent claims he was high on drugs at the time.

Mrs. Anderson, a Scott County Human Services employee, subsequently contacted that office to inquire about getting drug treatment counseling for her son. Because of Mrs. Anderson's employment with Scott County Human Services, the matter was referred to Dakota County Human Services. Scott County Human Services also contacted the Savage police department.

Officer Joe Williams of the Savage police department and John Korman of Dakota County Human Services then contacted Mrs. Anderson. She does not remember who contacted her first. When Officer Williams first met with Mrs. Anderson, she told him about respondent's drug use, the family's financial inability to send him to treatment, and the need to get some help. She stated that Williams "was very consoling and very helpful and sounded like this was the way to go." She had several conversations with Williams in which they discussed counseling for respondent and having respondent come down to the police station to talk about the incident. Williams

testified at the omnibus hearing that he discussed with Mrs. Anderson the possibility of criminal charges. Mrs. Anderson recalled no such discussion. She testified that she understood from her discussions with Williams that if respondent cooperated with Williams, he could obtain treatment at county expense, and that if he successfully completed treatment and stayed clean for a period of time, the charges would be dropped and the matter would not go to trial.

Mrs. Anderson relayed her understanding of the discussions with Williams and Korman to the respondent. Respondent testified that he understood that in order to get treatment, he would have to talk to the police about the incident.

On November 29, 1984, Mrs. Anderson drove her son to the Savage police department. Respondent testified that Williams greeted them and told him that "someone was in the back room from a drug treatment center or a drug counselor or something like that and I would get a chance to talk to him." Respondent was asked to wait in the entryway while his mother and Williams went back to Williams' office, where Mrs. Anderson met with Williams and Korman for five to ten minutes. Mrs. Anderson testified that they discussed treatment, that she was told Korman's "main function was to get us started in a treatment program, that this was going to be paid by the county, that this was the way we should go." She was then asked to leave, and respondent was brought back to Williaims' office.

Williams introduced respondent to Korman. Respondent testified that when he asked why Korman was there, Williams told him Korman was there for drug treatment evaluation purposes. Williams testified that he told respondent he was not under arrest, that he had no intention of placing him under arrest at that time, that respondent could leave at any time, and that anything he said could be used in a "court hearing." Williams admitted on cross-examination that he did not use the words "criminal proceeding."

Williams testified that Korman and respondent discussed counseling, and respondent then made an oral confession. After the oral confession, Williams had respondent make a written confession which was typed up on a form and brought in for respondent's signature. Williams testified that he discussed the possibility of criminal charges at this time, but acknowledged that his police report did not reflect this. The entire meeting lasted approximately half an hour.

At the omnibus hearing, respondent moved to suppress his confessions on the grounds of voluntariness. The trial court found that "the oral and written confessions made by defendant on October 29, 1984 were the product of inducement and are therefore inadmissible as involuntary statements." The court granted the motion to suppress, stating in its memorandum:

> Defendant, 20 years old when the confessions were made, appears to have had little contact or experience with the criminal justice system. But more importantly, Defendant was induced to come to the Savage Police Department by indications that treatment for chemical dependency would then be given. It was Defendant's understanding that it was necessary for him to give a statement to the police in order to begin treatment. That obtaining treatment was defendant's objective in giving the confessions is supported by the fact that John Korman of Dakota County Human Services was present at the time Defendant made the confessions.
>
> These factors taken together make it clear that Defendant's oral and written confessions were not a product of his own free will but were induced through indications that treatment would be given. The confessions are therefore held to be involuntary and inadmissible at trial.

## ISSUE

Will suppression of respondent's statement have a critical impact on the outcome of the trial?

## ANALYSIS

■ In a pretrial appeal from an order suppressing evidence in a criminal case, this court will reverse the trial court only "if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment *and* that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977) (emphasis added); *State v. Lee,* 376 N.W.2d 259, 261 (Minn.Ct.App.1985).

Here, the state has not met its burden of showing that the suppressed statements will have a critical impact on the outcome of the trial. There is no Minnesota Supreme Court case where the state has met the critical impact test. This court has only infrequently held that the state met the test. In two of these cases, the suppression would have excluded all of the state's evidence in the case. *See State v. Whelan,* 350 N.W.2d 414, 416 (Minn.Ct. App.1984); *State v. Kline,* 351 N.W.2d 388, 390 (Minn.Ct.App.1984). In *State v. Hanson,* 355 N.W.2d 328 (Minn.Ct.App.1984), the trial court excluded illegally obtained evidence (sexually explicit magazines) which corroborated the testimony of the defendant, a nine-year old sexual assault victim. This court reversed the suppression order, holding that although the victim's testimony was sufficient as a matter of law, her young age affected her credibility, and the seized materials would aid the jury in evaluating her credibility. *Id.* at 329. This court's decision in *Hanson* did not turn on the fact that it was a sex abuse case, and *Hanson* does not represent an exception to the *Webber* standard for sex abuse cases.

■ Here, the state has failed to show that the remaining evidence is "so weak that all possibility of conviction has been destroyed," *Lee,* 376 N.W.2d at 262, or that the lack of respondent's incriminating statement "will cause the state's case to collapse," *State v. Pelovsky,* 347 N.W.2d 529 (Minn.Ct.App.1984). The state still has the testimony of the victim and the testimony of Mrs. Anderson, who witnessed the incident, as well as the prior statements of both. Unlike the nine-year old victim in *Hanson,* the victim here will be sixteen when the case goes to trial. The suppressed confessions will not be necessary to aid in evaluating her credibility.

The state argues that the victim in this case may be deemed unable to testify, that Mrs. Anderson is, at best, an unwilling witness against her son, and that the prior statements may be ruled inadmissible at trial. The unavailability of the victim, however, is at this point a matter of pure speculation. At the omnibus hearing, the Scott County Attorney indicated that she had subpoenaed the victim but that she had not yet made the decision whether to call her as a witness. Although the victim's guardian ad litem brought a motion to excuse the victim from testifying on the grounds that it would be psychologically harmful for her to do so, the trial court declined to rule on this motion until such time as she was called to testify.

The alleged adversity of Mrs. Anderson to the state is also a matter of pure speculation. While Mrs. Anderson may appear unwilling to testify against her son, the state has subpoena power over her and there is no indication in the record that she intends to commit perjury. If she were to change her story on the witness stand, the state has her prior statements to the police. These statements should be admissible for impeachment purposes and also as substantive evidence under Minn.R.Evid. 803(24). *See State v. Ortlepp,* 363 N.W.2d 39, 44 (Minn.1985); *State v. Soukup,* 376 N.W.2d 498 (Minn.Ct.App.), *pet. for rev. denied* (Minn. Dec. 30, 1985).[1]

---

1. We note that the issue of the admissibility of the statements of the victim and the mother has not yet been ruled on by the trial court and is not before this court for review. While we must discuss their probable admissibility in deciding the critical impact issue, our discussion is not intended to be binding on the trial court on remand, if and when it is called upon to rule on the admissibility of the statements.

The state's burden is to demonstrate *"clearly and unequivocally* that * * * the error will have a critical impact on the outcome of the trial." *Webber,* 262 N.W.2d at 159 (emphasis added). Mere speculation is not enough. The state has failed to meet its burden.

Because the state has failed to show that the trial court's suppression order will have a critical impact on the outcome of the trial, we need not review the trial court's determination that the respondent's statements were involuntary. The trial court may still reconsider its decision, however, upon proper application of the parties. *Webber,* 262 N.W.2d at 159; *Lee,* 376 N.W.2d at 262.

## DECISION

The order of the trial court suppressing respondent's oral and written confessions is affirmed and the case is remanded for further trial court proceedings.

Affirmed and remanded.

FORSBERG, Judge, concurring specially:

I concur in the decision because in a series of cases commencing with *State v. Webber,* the critical impact doctrine has been upheld. I would, however, respectfully suggest that the Supreme Court reconsider *State v. Webber,* 262 N.W.2d 157 (Minn.1977), and overrule it. Because in *State v. Webber* the State is required to demonstrate *clearly* and *unequivocally* that the evidence will have a critical impact on the outcome of the trial, the State is consistently deprived of the right to present strong incriminating evidence in a case. In this case an admission of defendant, which is always effective with a jury in convicting a defendant, is suppressed, possibly for no valid constitutional reason. The rationale is similar to the rule in the past involving preliminary hearings. In those cases the State needed to produce only sufficient evidence that there was probable cause that defendant committed the crime. Under *Webber,* the State is, sometimes, virtually confined to such evidence when it must prove guilt beyond a reasonable doubt.

NIERENGARTEN, Judge, concurring specially:

I join Judge Forsberg in his special concurrence.