*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2205**

State of Minnesota,
Respondent,

vs.

Janice Marie Cortes,
Appellant

**Filed September 8, 2014
Affirmed
Peterson, Judge**

Ramsey County District Court
File No. 62-CR-12-7815

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter Reed Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

     Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

Appellant challenges her conviction of third-degree controlled-substance crime, arguing that the district court erred by refusing to suppress evidence discovered during execution of a search warrant because (1) the warrant affidavit did not establish probable cause that drugs or evidence of drug activity would be found in her residence and (2) the no-knock or unannounced entry authorized by the warrant was not supported by reasonable suspicion that it would be dangerous for police to knock and announce their presence. We affirm.

## FACTS

Maplewood police officer Joseph Steiner, who was acting as a narcotics officer with the Ramsey County Violent Crime Enforcement Team (VCET), arranged a controlled drug buy between a confidential reliable informant (CRI) and an unknown woman, later identified as appellant Janice Marie Cortes. The CRI told Steiner that a woman had been selling methamphetamine (meth) in the St. Paul area and that the CRI knew an "unwitting party" who would take the CRI to purchase drugs from the woman. In the search-warrant application, Steiner stated that he "knows that the information provided by the [CRI] has proven to be true and correct through independent corroboration by" Steiner. Steiner requested that the CRI's identity remain confidential because revealing the identity would put the CRI "in danger of great bodily harm."

Steiner met with the CRI and followed the protocol for a controlled buy: he searched the CRI and the CRI's car; he provided the CRI with pre-recorded money; and

he and other officers conducted surveillance during the transaction. The CRI picked up the unwitting party and drove to a pre-determined location, where they met a woman driving a blue Ford Explorer. The three met briefly, and then returned to their cars. The CRI dropped off the unwitting party and then met Steiner for debriefing. Steiner confirmed that the drug received by the CRI was meth.

Another officer followed the blue Explorer until he could view the driver. The license plate on the Explorer was registered to Cortes, with an address of 1645 Marion Street, #204, in St. Paul. The officer was able to view the driver and later identified the driver as Cortes by viewing a booking photograph.

In the search-warrant affidavit, Steiner stated that Cortes made two calls to police in 2011, and both times gave her address as 1645 Marion Street. Also, two VCET officers gave Steiner information they received from two informants within the preceding six months to one year. One informant stated that Cortes was selling large amounts of meth in St. Paul and that she lived near Marion Street and Wheelock Parkway. The other informant stated that Cortes was selling large amounts of meth in St. Paul. Steiner and other officers saw the blue Explorer parked outside 1645 Marion Street.

Steiner stated in the warrant affidavit that in 2008 Cortes was living at a different address; during a search of that residence, two handguns were found, one in Cortes's bedroom. In a second incident in 2008, Cortes was a passenger in a car when police found a handgun in the engine compartment.

Steiner also included Cortes's criminal record in the search-warrant application. Cortes had two prior convictions and three prior arrests for controlled-substance crime,

an arrest for burglary and terroristic threats, and two arrests for being a felon in possession of a firearm. Because of Cortes's two arrests as a felon in possession of a firearm, Steiner asked that the court authorize a nighttime/no-knock warrant to prevent the loss, destruction, or removal of the objects of the search and to protect the safety of the peace officers. The district court issued a nighttime/no-knock warrant, which was executed at 9:30 a.m. on January 20, 2012.

During the search of Cortes's apartment, police found $5,859 and two baggies that contained more than 12 grams of meth. In a statement she made after receiving a Miranda warning, Cortes said that one baggie was hers but the other belonged to her sister. She provided a number of explanations for the currency, saying her grandma gave it to her, it was her father's money, and she earned it acting as an escort.

Cortes moved to suppress evidence recovered during the search of her apartment. The district court denied her motion, and Cortes agreed to submit the issue of guilt to the court on stipulated facts. *See* Minn. R. Crim. P. 26.01, subd. 3. The district court found Cortes guilty and imposed a 39-month executed sentence. This appeal followed.

**D E C I S I O N**

**I.**

Before a lawful search warrant can be issued, "[a] warrant application must establish probable cause for the issuing court to believe that a crime has been committed and that evidence of the crime will be found at the place to be searched (the so-called "nexus" requirement)." *State v. Ruoho*, 685 N.W.2d 451, 456 (Minn. App. 2004), *review denied* (Minn. Nov. 16, 2004). On review, we defer to the district court's factual

4

findings, in light of the totality of the circumstances supporting issuance of a warrant, but we review the district court's legal determinations de novo. *State v. Jenkins*, 782 N.W.2d 211, 222 (Minn. 2010). The search-warrant application must be "interpreted in a common-sense and realistic manner." *State v. Gail*, 713 N.W.2d 851, 858 (Minn. 2006) (quotation omitted).

A search-warrant application must "contain information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched." *Id.* (quotation omitted). So as not to discourage the use of warrants, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." *Id.* (quotation omitted). "[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause." *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004).

Information provided by a CRI, if reliable and if a basis for the CRI's knowledge is demonstrated, can establish probable cause for a warrant:

> There are six factors for determining the reliability of confidential, but not anonymous, informants: (1) a first-time citizen informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

*State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). Steiner stated in the warrant application that "the information provided by the [CRI] has proven to be true and correct

5

through independent corroborative investigation." The CRI told Steiner about a woman who was selling meth in the St. Paul area and described the woman as a "white female approximately 29 years of age, 5'1" tall, 140 lbs., with long brown hair." The CRI engaged in a controlled buy with a woman driving a car registered to Cortes; another police officer followed the car and was able to positively identify the driver as Cortes after viewing a booking photograph. Two other officers stated that they received information that corresponded to the CRI's information. These facts, which were included in the warrant application, established the CRI's reliability. *See Jones*, 678 N.W.2d at 11 (stating that a collection of information can provide probable cause, even if each individual fact does not).

Cortes argues that the application does not provide a nexus between the crime and the place to be searched, her apartment. *See Ruoho*, 685 N.W.2d at 456. A sufficient nexus between the evidence sought and the place to be searched need not be based on direct observation. *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014). The issuing magistrate can consider "the type of crime, the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items." *Id.* at 623. A distinction is drawn between a "drug wholesaler"[1] and a "casual user;" courts recognize that "[i]t may be reasonable to infer that drug wholesalers keep drugs at their residences, but such an inference, without more, is unwarranted for casual users." *Id.*

---

[1] The term "wholesaler" refers to a person who engages in large-scale drug sales. *See State v. Souto*, 578 N.W.2d 744, 748 n.2 (Minn. 1998); *Novak v. State*, 349 N.W.2d 830, 832-33 (Minn. 1984).

In *Yarbrough*, the supreme court concluded that the defendant was a drug wholesaler and a sufficient nexus was established between the defendant's drug activities and his apartment because (1) the defendant had been arrested previously for possession of controlled substances with intent to distribute; (2) a CRI identified the defendant as a drug dealer; and (3) the defendant declared that someone stole a large amount of crack cocaine from him. *Id.* at 624. In the warrant application, Cortes was identified by the CRI as someone who "is selling methamphetamine in the St. Paul, Minnesota area." Two other informants told other police officers that Cortes was selling "a large amount of methamphetamine." One informant stated that Cortes lived in an apartment off Wheelock and Marion, which was confirmed by police records. Police officers also saw the car that Cortes drove to the controlled buy, and that was registered to Cortes, parked in front of the apartment building. The warrant application was made after the CRI participated in a controlled buy from Cortes, which is a more convincing detail than Yarbrough's statement that someone stole crack cocaine from him. The application also listed Cortes's criminal history of five drug-related arrests, including two convictions.

In *Souto*, 578 N.W.2d at 749, the supreme court concluded that an officer's vague or conclusory statements that a person was a drug dealer were insufficient to establish probable cause. The supreme court summed up the information this way:

> [T]he affidavit at issue here did not indicate that Souto ever arranged drug deals, sold, or distributed drugs, much less that she performed such acts from her home. Rather, the only direct connection to a drug supply is the package mailed to Souto, which she never received. Furthermore, the location to which the package was addressed had ceased to be Souto's residence some seven months before the affidavit was made

and the search warrant itself was directed to a building in St. Hilaire, although the affidavit does not even assert that the St. Hilaire building is Souto's home. The officer's statements that Souto *did not receive drugs* directed to her residence in Thief River Falls can in no way support an inference that she was *dealing drugs* from her home in St. Hilaire.

*Id.* at 748-49 (emphasis in original).

The information in Steiner's warrant application is more detailed than the information in *Souto* and ties Cortes to a particular residence and to an actual drug sale that occurred within 72 hours before the warrant application was prepared. Under the totality of the circumstances, the warrant application provides enough information to "warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched." *Gail*, 713 N.W.2d at 858 (quotation omitted). Furthermore, unlike Souto, Cortes was not a casual user; she acted as a drug wholesaler, which provides a logical nexus to her residence under the reasoning of *Yarbrough*. 841 N.W.2d at 623.

Based on the deferential standard of review and the preference to encourage the use of warrants, the warrant application establishes probable cause to believe that a crime had been committed and that evidence of the crime would be found at Cortes's residence.

**II.**

Cortes argues that the warrant application "did not establish a sufficient basis for the issuance of a no-knock search warrant." The requirement that the police knock and announce their presence when executing a warrant serves the purpose of "preventing the unnecessary destruction of property and mistaken entry into the wrong premises,

8

protecting against unnecessary shock and embarrassment, and decreasing the potential for a violent response." *State v. Wasson*, 615 N.W.2d 316, 319-20 (Minn. 2000).

An application for a no-knock warrant must demonstrate that police have a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S. Ct. 1416, 1421 (1997). The standard of "reasonable suspicion" is "not high" and is a lesser standard than probable cause. *Id.*, 117 S. Ct. at 1421-22. But there is not a blanket exception that permits a no-knock entry in all felony drug cases. *Id.* at 395, 117 S. Ct. at 1422.

In *Wasson*, the Minnesota Supreme Court stated that reasonable suspicion must be "more than an unarticulated hunch, that the officer must be able to point to something that objectively supports the suspicion at issue." 615 N.W.2d at 320. The supreme court noted that "the officer could point to a particular fact about this particular residence – that coupled with ongoing drug activity numerous weapons were found there three months previously – that led him to suspect that officer safety might be jeopardized." *Id.* at 321.

The warrant application included information that Cortes was arrested twice as a felon in possession of a firearm and at least once handguns were recovered from her residence, including one found in her bedroom. In *Wasson*, the no-knock entry was approved based on a prior seizure of weapons from the same address and drug sales that occurred at the residence. *Id.* at 320-21. In *State v. Barnes*, this court upheld a no-knock warrant based on allegations that the defendant was a known gang member involved in an

9

extensive drug-dealing operation.  618 N.W.2d 805, 811 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001).  Barnes argued that the application was deficient because it "presented no specific, objective information about weapons or drug amounts present at" the searched premises.  *Id.*  But this court rejected the argument, concluding that the "proposed requirement of specific information about conditions inside the house would virtually impose a probable-cause standard on no-knock provisions [when] [t]he standard . . . is only reasonable suspicion."  *Id.* at 811-12.  This court also noted the defendant's prior criminal record and the high level of drug trafficking.  *Id.* at 812.

Cortes no longer lived in the apartment where police found a handgun in 2008, but the fact that she was arrested twice for felon-in-possession-of-a-firearm charges creates a reasonable suspicion that she would have a firearm at her current residence.  Bearing in mind the lesser standard of reasonable suspicion, the affidavit provides a sufficient basis for a reasonable suspicion that knocking and announcing would pose a risk to officer safety.  *Id.* at 811.

**Affirmed.**