*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0077**

State of Minnesota,
Respondent,

vs.

Devon Griffen Seivers,
Appellant.

**Filed January 5, 2015
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-11-31502

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Peterson, Judge; and Hudson, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of a first-degree controlled-substance crime, arguing that the district court erred by denying his motion to suppress evidence seized during execution of a search warrant. He contends that the warrant was not supported by probable cause and that the warrant's no-knock provision was unjustified. We affirm.

**FACTS**

Respondent State of Minnesota charged appellant Devon Griffen Seivers with first-degree possession of a controlled substance. The complaint alleged that on October 5, 2011, Minneapolis police executed a no-knock search warrant at an apartment at 309 1/2 West Lake Street. As officers entered the front of the residence, an officer positioned at the rear of the apartment building saw Seivers come out onto the rear deck and drop a paper bag onto a drain spout connected to the wall of the residence. The officer retrieved the bag, which contained 37.2 grams of cocaine.

Seivers moved to suppress the drugs, arguing that the warrant to search the Lake Street apartment was not supported by probable cause and that the warrant's no-knock provision was unjustified. The state responded that Seivers lacked "standing" to challenge the search, noting that the apartment was leased by K.K., that Seivers did not reside at the apartment, and that Seivers "was present at the apartment for the purpose of conducting his narcotics sales." The state also argued that even if Seivers had standing, the drugs should not be suppressed because the warrant was supported by probable cause and that the unannounced entry was properly authorized.

The district court held a hearing on the motion to suppress. Seivers presented testimony from the Lake Street apartment leaseholder, K.K., in an attempt to establish that he had a reasonable expectation of privacy in the apartment as a social guest. The district court rejected that theory and concluded that Seivers lacked standing to challenge the search. The district court denied Seivers's motion to suppress without addressing probable cause or the no-knock provision in the warrant. The case was tried to a jury, the jury found Seivers guilty, and the district court sentenced Seivers to serve 125 months in prison. Seivers appeals.

## DECISION

Seivers argues that he "had standing to challenge the search warrant executed at his friend [K.K.'s] apartment because he was [a] social guest." Seivers further argues that "[b]ecause the district court mistakenly held that [he] did not have standing to challenge the search warrant" and therefore did not address his arguments regarding probable cause and the no-knock provision in the warrant, this court should address these challenges. The state responds that "there is no merit to [Seivers's] arguments that the search warrant was not supported by probable cause or that the unannounced entry was unjustified." Thus, the state argues, "even if [Seivers] had standing . . . , the evidence would not have been suppressed."

Because the issues regarding probable cause and the validity of the no-knock provision are fully briefed and clearly dispositive, we assume, without deciding, that

3

Seivers had the necessary reasonable expectation of privacy to challenge the search and focus our review on the search warrant.[1]

*Probable Cause*

The United States and Minnesota Constitutions provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is lawful only if it is executed pursuant to a valid search warrant issued by a neutral and detached magistrate after a finding of probable cause. *See* Minn. Stat. § 626.08 (2010); *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999). "When determining whether a search warrant is supported by probable cause, we do not engage in a de novo review." *State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Instead, "great deference must be given to the issuing [magistrate's] determination of probable cause." *State v. Valento*, 405 N.W.2d 914, 918 (Minn. App. 1987). When reviewing a decision to issue a search warrant, we limit our review to whether the judge issuing the warrant had a substantial basis for concluding that probable cause existed. *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014).

To determine whether the issuing magistrate had a substantial basis for finding probable cause, we look to the "totality of the circumstances." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985).

---

[1] This court has recognized that the proper framing of the issue is not whether a person has "standing" to challenge a search, but whether the person has a reasonable expectation of privacy in the area to be searched. *State v. Stephenson*, 760 N.W.2d 22, 24 n.2 (Minn. App. 2009).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).  In reviewing the sufficiency of a search-warrant affidavit under the totality-of-the-circumstances test, "courts must be careful not to review each component of the affidavit in isolation."  *Id*.  "[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause."  *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004).  "Furthermore, the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants."  *Wiley*, 366 N.W.2d at 268 (quotation omitted).

In this case, Minneapolis Police Officer Matt Kipke submitted the search-warrant application.  Kipke's sworn affidavit in support of probable cause provided facts regarding two separate time periods.  Kipke stated that he "began receiving information in May of 2011 from a confidential reliable informant (CRI) that crack cocaine was being sold from 309 1/2 West Lake Street."  Kipke explained that K.K. leases the apartment and allows people to sell crack cocaine from her apartment in exchange for providing her with crack.  Kipke summarized the information regarding the drug sales at the apartment as follows:

> The CRI had seen crack cocaine inside of this apartment numerous times within the past two months.  The CRI told me that numerous different people are selling crack cocaine from this address with the main dealer being "Ike."  He was

5

described as a black male, 30s in age, cornrows. "Ike" was described as being very volatile and violent. The CRI has seen "Ike" assault numerous people in [the CRI's] presence. The CRI states that it is common knowledge that "Ike" is always armed with a handgun while selling narcotics. The CRI has heard "Ike" reference his gun and having a gun. The CRI told me that everyone is afraid of "Ike" because of him being violent and having a handgun.

Kipke further attested that "Ike" "usually starts selling after dark" and "usually sells crack cocaine all night long from this location." Kipke explained that after conducting surveillance on more than one occasion and twice observing heavy foot traffic coming and going from the location around 10 p.m., he obtained a no-knock search warrant on June 24. But "Ike" left the apartment and officers were not able to execute the warrant before it expired. Kipke contacted K.K., and K.K. "assured [him] that 'Ike' was not going to be selling narcotics from her apartment anymore."

The second time period Kipke referenced in his supporting affidavit was "[w]ithin the past 72 hours" of the date of the search-warrant application, September 29. Kipke stated the following:

I received information from a confidential reliable informant (CRI) that crack cocaine was being sold from 309 1/2 West Lake Street. I have used this CRI numerous times and have always found [the CRI's] information to be reliable and truthful. Information from this CRI has led to the recovery of narcotics, money and weapons which have led to numerous convictions in state court. Within the past 72 hours, the CRI was inside this apartment and had observed "Ike" sell crack cocaine to over ten different people. The CRI advised that "Ike" stores the crack cocaine outside on the rear deck. The CRI believes that "Ike" has taken over the apartment and is threatening [K.K.] with bodily harm if his crack cocaine sales are interrupted. "Ike" was observed threatening numerous different people in the apartment. "Ike" was heard telling

6

> people that this was "his spot" and that he would shoot if anyone came in and sold crack cocaine from "his spot."

Seivers contends that "[t]he warrant application fell short of establishing probable cause" and challenges the reliability of the CRI in support of his contention. When a search-warrant application is based on an informant's tip, we will not assume that the informant is credible. *State v. Siegfried*, 274 N.W.2d 113, 114 (Minn. 1978). The supporting "affidavit must provide the magistrate with adequate information from which he can personally assess the informant's credibility." *Id.* The issuing judge must consider the informant's basis of knowledge and veracity. *State v. Souto*, 578 N.W.2d 744, 750 (Minn. 1998) (citing *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332). The United States Supreme Court has stated that the basis of knowledge and veracity should not be viewed as "entirely separate and independent requirements." *Gates*, 462 U.S. at 230, 103 S. Ct. at 2328. "[T]hey should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question [of] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id*.

Seivers cites *State v. Ward*, which describes "six considerations bearing on the reliability of an informant who is confidential but not anonymous to police." 580 N.W.2d 67, 71 (Minn. App. 1998).

> [First, a] first-time citizen informant who has not been involved in the criminal underworld is presumed to be reliable, but the affidavit must specifically aver that the informant is not involved in criminal activity. [Second], an informant's reliability may be demonstrated where the

7

informant has previously given police correct information, but the affidavit must explicitly state this to be the case.

[Third, a]n informant's reliability may be established by sufficient police corroboration of the information supplied, and corroboration of even minor details can lend credence to the informant's information where the police know the identity of the informant. [Fourth, w]here an informant voluntarily comes forward (without having first been arrested) to identify a suspect, and in the absence of a motive to falsify information, the informant's credibility is enhanced because the informant is presumably aware that he or she could be arrested for making a false report. [Fifth, i]n narcotics cases, where the affidavit refers to a "controlled purchase," the magistrate may accept this as a term of art and presume that police searched the informant immediately before and after the alleged drug purchase and conducted surveillance of the purchase to the extent feasible.

[Sixth], the fact that an informant makes a statement against his or her own penal interest is of some minimal relevance in a totality-of-the-circumstances analysis.

*Id*. (citations and quotations omitted).

Under these factors, Seivers correctly points out that the search-warrant application does not establish that the CRI is a first-time citizen informant, that the CRI voluntarily came forward, or that the CRI was subject to penal consequences as a result of the information the CRI provided to Kipke. Seivers also argues that Kipke did not sufficiently corroborate the CRI's information because "there is no indication that the foot traffic was attributable to 309 1/2 Lake Street, or if it came from a different apartment in the same building." But Kipke stated in the warrant application that he observed the heavy foot traffic "coming and going *from this location*" (emphasis added), indicating that he was referring to 309 1/2 Lake Street. And although there is no

8

indication that Kipke observed the foot traffic enter K.K.'s apartment, heavy foot traffic in and out of the apartment building at night is consistent with drug dealing and provides corroboration amounting to at least a "minor detail." *See id.* ("[C]orroboration of even minor details can lend credence to the informant's information where the police know the identity of the informant." (Quotation omitted.)). Moreover, the CRI's information was corroborated by K.K., who provided the police with at least a tacit admission that "Ike" was dealing drugs from the apartment when she "assured" the police that "'Ike' was not going to be selling narcotics from her apartment *anymore*." (Emphasis added.)

Seivers further argues that "even if there was corroboration of the original claims of the CRI of drug selling, this information was only relevant to the original unexecuted search warrant in June of 2011" and that "[a]fter that warrant was not executed, the information became stale." In determining whether information supporting a search warrant is stale, the issuing judge must apply "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *State v. Jannetta*, 355 N.W.2d 189, 193 (Minn. App. 1984) (quotation omitted), *review denied* (Minn. Jan. 14, 1985). "The court's approach should be one of flexibility and common sense." *Id.* And "[w]hen an activity is of an ongoing, protracted nature, the passage of time is less significant." *Souto*, 578 N.W.2d at 750. Here, the search-warrant application indicated that the alleged drug dealing from the apartment was ongoing and of a protracted nature. The warrant application alleged that "Ike" was selling drugs from the apartment in May. It also alleged that "Ike" was selling drugs from the same apartment in September. The passage of a few months did not render Kipke's corroboration stale.

But even without corroboration, the CRI's veracity was established by the sworn statement in the warrant application that the CRI had previously given police correct information. *See Ward*, 580 N.W.2d at 71. This "factor is fulfilled by a simple statement that the informant has been reliable in the past because this language indicates that the informant had provided accurate information to the police in the past and thus gives the magistrate reason to credit the informant's story. There is no need for law-enforcement officers to provide specifics of the informant's past veracity." *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004) (citation and quotation omitted). Kipke stated in the warrant application that he had "used this CRI numerous times and [had] always found [the CRI's] information to be reliable and truthful. Information from this CRI has led to the recovery of narcotics, money and weapons which have led to numerous convictions in state court." This statement was sufficient to provide the issuing judge reason to credit the CRI's allegations.

Seivers argues that there is no indication that the CRI referenced in the first time period is the same person as the CRI referenced in the second time period and that "there is no information that the first CRI has provided correct information to the police in the past." It is unclear from the warrant application if the CRI who provided information in May was the same CRI who provided information in September. And only the September CRI was credited with having providing correct information in the past. But Seivers's argument regarding this ambiguity is irrelevant because the information provided by the September CRI was sufficient to establish probable cause in and of itself. "Recent personal observation of incriminating conduct has traditionally been the

10

preferred basis for an informant's knowledge." *Ward*, 580 N.W.2d at 71 (quotation omitted). "Additionally, an informant's statement that the event was observed first-hand entitles his tip to greater weight than might otherwise be the case." *State v. Holiday*, 749 N.W.2d 833, 840 (Minn. App. 2008) (quotation omitted). Here, the September CRI stated that he or she had been inside the Lake Street apartment within the past 72 hours and personally observed "Ike" sell crack cocaine to over ten different people.

In sum, the search-warrant application sufficiently established the CRI's basis of knowledge and veracity, and the CRI's information established "a fair probability that contraband or evidence of a crime [would] be found," *Wiley*, 366 N.W.2d at 268, in the Lake Street apartment. Thus, the warrant was supported by probable cause.

*Unannounced Entry*

Seivers also challenges the no-knock provision in the warrant. "Where the material facts are not in dispute, this court independently reviews whether a no-knock entry was justified." *State v. Barnes*, 618 N.W.2d 805, 810 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001).

A reasonableness inquiry under the Fourth Amendment includes consideration of the necessity of an unannounced entry. *State v. Wasson*, 615 N.W.2d 316, 320-21 (Minn. 2000). "Given the constitutional dimension to the method of entry into a residence, evidence should be suppressed when the circumstances do not warrant an unannounced entry." *Id*. at 321. The supreme court "require[s] the police to inform the issuing magistrate of the circumstances that they believe justify the unannounced entry and to obtain specific advance authorization for an unannounced entry." *Id*. "To substantiate

11

the need for a no-knock warrant an officer must establish more than that drugs are involved." *Id.* The "police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* (quotation omitted). The standard is "reasonable suspicion," and "[i]n other contexts [the supreme court] has defined reasonable suspicion as something more than an unarticulated hunch, . . . the officer must be able to point to something that objectively supports the suspicion at issue." *Id.*

The search-warrant application in this case stated that an unannounced entry was necessary for the following reasons: "'Ike' is described as being very violent. 'Ike' claims to have a gun while selling narcotics. CRI has seen 'Ike' assault numerous people. An unannounced entry would give entry officers a tactical advantage because of the threat of guns and shooting."

Seivers argues that "[t]his information is insufficient because the CRI's claims were not corroborated by the police." Seivers cites *Wasson* to support his proposition that the police need to corroborate the facts offered to establish the basis for an unannounced entry. In *Wasson*, the supreme court held that the police "presented to the magistrate facts that established a reasonable suspicion of a threat to officer safety necessary for an exception to the 'knock and announce' requirement of the Fourth Amendment." *Id.* at 322. Part of the supreme court's reasoning was that "the search warrant affidavit . . . pointed to a specific, objective piece of information: that weapons were likely present in the house given that numerous weapons were seized [by the police

12

executing a prior warrant] from the exact location just three months previously." *Id*. at 320-21. Seivers appears to argue that this reasoning in *Wasson* creates a requirement that the police must always have first-hand knowledge of facts supporting the need for an unannounced entry.

But this court has rejected a similar interpretation of *Wasson*. In *Barnes*, the defendant argued that "the no-knock provision was invalid because the application presented no specific, objective information about weapons or drug amounts present at [the warrant address]" and "note[d] that in *Wasson*, weapons had been seized before from the home to be searched." 618 N.W.2d at 811. In rejecting that argument, this court stated that the defendant's "proposed requirement of specific information about conditions inside the house would virtually impose a probable-cause standard on no-knock provisions. The standard, however, is only reasonable suspicion." *Id*. at 811-12. This court noted that the "showing required for a no-knock entry is not high." *Id*. at 811 (quotation omitted); *see also Wasson*, 615 N.W.2d at 321 (noting that "in the unannounced search context, [a reviewing court] may accept evidence of a threat to officer safety of a less persuasive character when the officer presents the request for a no-knock warrant to a magistrate").

In this case, Kipke had more than an unarticulated hunch that an unannounced entry was necessary. The September CRI, who had provided correct information in the past, told Kipke that he or she had been inside the Lake Street apartment "[w]ithin the past 72 hours." The CRI personally observed that "Ike" had "taken over the apartment," "threaten[ed] [K.K.] with bodily harm," "threaten[ed] numerous different people in the

13

apartment," and said that "he would shoot if anyone came in and sold crack cocaine from 'his spot.'" Those assertions established reasonable suspicion to believe that an announced entry would be dangerous and justified the no-knock provision. *See Wasson*, 615 N.W.2d at 320 (stating that "police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous").

In conclusion, assuming without deciding that Seivers had the necessary reasonable expectation of privacy to challenge the search in this case, the district court did not err by denying his motion to suppress because the search warrant was supported by probable cause and the unannounced entry was supported by reasonable suspicion.

**Affirmed.**